FILED

AUG 27 2008

Clerk, U.S. District and Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CATHERINE SEABROOKS
11766 Barrows Lane
Woodbridge, VA 22192

Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATIONS
J. Edgar Hoover Building
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

and

MICHAEL B. MUKASEY, Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

SERVE:

Civil-Process Clerk
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

ALSO SERVE:

JEFFREY A. TAYLOR, US Atty. For the
District of Columbia
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530

Defendants.

JURY ACTION

Case: 1:08-cv-01490
Assigned To : Leon, Richard J.
Assign. Date : 8/27/2008
Description: Employ. Discrim.

Civil Action No. ________

## COMPLAINT

The Plaintiff, Catherine Seabrooks, by and through undersigned counsel, files this civil complaint to recover damages against the Defendants Michael B. Mukasey,

Attorney General, U.S. Department of Justice, and the Federal Bureau of Investigations (hereinafter "FBI") for violations of her rights under Title VII of the Civil Rights Act of 1964, as amended by the 1991 Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. (hereinafter "Title VII"):

## JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to Title VII, 42 U.S.C. § 2000e, *et seq*.;

2. Venue is proper in this district pursuant to the general venue statute, 28 U.S.C. §1391.

3. The amount in controversy herein exceeds $75,000.00 exclusive of costs and interest (28 U.S.C. § 1332).

4. This action properly lies in the District Court for the District of Columbia because this judicial district has personal jurisdiction over Defendants. This action is also in accordance with 28 U.S.C. § 1331.

5. These claims arise out of acts undertaken and injuries suffered in this federal district.

## PARTIES

6. Catherine Seabrooks is African-American, female, employed with the FBI and a resident of Woodbridge, Virginia

7. Defendant Michael B. Mukasey, is the Attorney General for the United States Department of Justice, a government agency headquartered in this judicial district, which is subject to the provisions of Title VII.

8. The Defendant the FBI, a government agency headquartered in this judicial district, which is an employer within the meaning of 42 U.S.C. § 2000e.

## ADMINISTRATIVE PROCEDURES

9. Plaintiff timely filed formal charges of discrimination against the Defendants with its Equal Employment Opportunity office (EEO) on December 13, 2006, in accordance with EEOC Regulation 29 C.F.R. § 1616.106.

10. Plaintiff has since elected to withdraw her discrimination complaint and pursue a remedy through this civil action.

11. Plaintiff therefore has satisfied all administrative and judicial prerequisites to institute this action.

## FACTUAL ALLEGATIONS

12 . Plaintiff Catherine Seabrooks is an African American Female, who has been employed by the FBI for more than thirty-one (31) years.

13. Plaintiff holds a Bachelor's Degree in the field of Computer Information Systems, and is duly certified in the area of CompTIA A+ and Network+ Certified Professionals, HTCI Certified High Technology Crime Investigator Specializing in Linux and Network Computer and Internet Investigation, and various other computer classes in computer software and hardware, computer forensic and network administration.

14. Plaintiff is employed by the FBI as an IT Specialist (Systems Analysis), GS-13.

15. In April 2004, Plaintiff was assigned to the Forensic Audio, Video and Image Analysis Unit (hereinafter "FAVIAU") as network administrator.

16. On September 15, 2006, Plaintiff received her performance appraisal, dated September 12, 2006 from Unit Chief Steven L. Lanser.

17. This performance appraisal reflected a summary rating of Minimally Successful by Chief Lanser.

18. Previously in July 2006, Chief Lanser prepared a performance rating for Plaintiff that rated her as Unacceptable.

19. However, on September 11, 2006, Chief Lanser e-mailed Plaintiff a copy of the "Unacceptable Appraisal" that appeared intended for Program Manager Larry Sellers, who was not in the Plaintiff's chain of command and who would have had no legitimate reason for reviewing or otherwise commenting upon Plaintiff's performance appraisal.

20. The appraisal by Chief Lanser improperly and falsely demonstrated Plaintiff's work performance.

21. Chief Lanser in Plaintiff's 2006 appraisal accuses Plaintiff of having been responsible for making an unfounded allegation that she was the victim of sex and race discrimination.

22. In March 2006, Chief Lanser called Plaintiff to his office to express his concerns about an e-mail that the Plaintiff had sent to him and EAP Counselor Dr. Judy Stone regarding special treatment of white females in the FAVIAU that resulted in raises, awards and/or promotion.

23. Chief Lanser told Plaintiff that the complaint was being made throughout the division and that he did not know who at first had made the complaint to EAP and EEO earlier in 2005 about favoritism, and special projects for white females, but he now knew it was the Plaintiff.

24. Chief Lanser told Plaintiff that due to her complaint with the allegations, he was mandated to do diversity training and he wanted the Plaintiff to send or call EAP and EEO to retract the e-mail or clarify that the e-mail was a mistake, or he would call on the Plaintiff's behalf.

25. Then, Plaintiff asked Chief Lanser if he was ordering her to make the call and retract her e-mail.

26. Ultimately, based on the conversation between Plaintiff and Chief Lanser, Plaintiff received an improper and discriminate based 2006 performance appraisal.

27. On September 29, 2006, Plaintiff filed a grievance to rebut her 2006 performance appraisal.

28. On October 2, 2006, Plaintiff met with Chief Lanser and ASC/DEL Director Michael D. Gilmore who presented Plaintiff with a letter from Human Resources Services regarding their denial of Plaintiff's within grade increase (WIGI).

29. Plaintiff spoke to Human Resources when she received her improper 2006 appraisal report to inquire into the rules, guidelines and grievance for the new Performance Appraisal Report (PAR) system.

30. Human Resources was familiar with Plaintiff's case against Chief Lanser and the Plaintiff had told them that she felt it was Chief Lanser's intention to give Plaintiff an unacceptable level on her 2006 PAR, and to stop Plaintiff's October 10, 2006 WIGI and seek Plaintiff's dismissal.

31. Chief Lanser intentionally withheld Plaintiff's 2006 PAR in July or August 2006 when others in the Unit received their PAR, despite Plaintiff's repreated inquiries about her PAR to Chief Lanser, in order to prevent Plaintiff from receiving her WIGI.

32. If Chief Lanser had released Plaintiff's 2006 PAR in July, Plaintiff would have been still eligible for her WIGI in October.

33. On October 18, 2006, Plaintiff, after having to request her Performance Improvement Plan (PIP) from Chief Lanser, received her PIP for the 2006 PAR.

34. However, Plaintiff's PIP addressed issues and concerns not identified or mentioned in the Plaintiff's 2006 PAR. Plaintiff informed Chief Lanser that the PIP was drafted outside of policy.

35. Chief Lanser told Plaintiff that the PIP was acceptable and would cover the timeframe of September 15, 2006 through December 15, 2006.

36. Plaintiff told Chief Lanser that she was concerned with the PIP because Human Resources had not provided any input or given their approval.

37. Chief Lanser assured Plaintiff that if she completes the tasks identified on the PIP successfully that there would be no problems with Human Resources, and that he could rate the Plaintiff at any time.

38. During a meeting on September 15, 2006, Chief Lanser told reviewing official ASC/DEL Director Gilmore that he never addressed or had a meeting with Plaintiff about the issues of performance.

39. In December 2004, Chief Lanser canceled Plaintiff's use or loose leave the evening before Plaintiff was to be on leave.

40. Additionally in December 2004, Chief Lanser postponed Plaintiff's extended leave.

41. Since May 2004, Plaintiff has provided access and appointed ET Robert Butcher as her backup person.

42. In December 2005, Plaintiff added ET William Hinton as backup.

43. Chief Lanser was aware and approved of ET Butcher as Plaintiff's backup in May 2004.

44. In December 2005, Chief Lanser was aware and approved of ET Hinton as an additional backup person for Plaintiff.

45. Chief Lanser approved of GETA Training for ET Butcher so that he could be a backup person for Plaintiff.

46. Chief Lanser treats white males and white females differently than African American Females and other minorities when it comes to approval and denial of leave.

47. Chief Lanser also treats white males and white females differently than African American Females and other minorities, allowing them opportunities that African American Females and other minorities are not provided.

48. Chief Lanser never denied or canceled any white males or females leave in the Unit regardless of issues or coverage.

49. Chief Lanser approved a white male employee to go on vacation for two weeks, despite the fact he was requested to testify in Court during the period of his vacation.

50. Chief Lanser treats white males and females differently than African American Females and other minorities when it comes to work performance and discipline.

51. Chief Lanser allowed a white male employee to continue employment without disciplinary action or a lower performance appraisal, even though that employee had one of the worst case back logs in the unit; despite the fact the employee was at the max of his grade series.

52. Regarding that same white male employee, Chief Lanser created a supervisory position for him and promoted him to a GS-14.

53. In 2004 and 2005, Plaintiff's supervisor, Pete Smith, discussed with Chief Lanser on several occasions upgrading Plaintiff's position, IT Specialist Analysis GS-13, to reflect Network Administrator GS-14 or a similar position that he felt Plaintiff deserved based on performance and duties.

54. Chief Lanser provided numerous excuses, none being Plaintiff's performance ability, and he never upgraded the Plaintiff's position.

55. Plaintiff asked Chief Lanser to post another IT position because she was over tasked; however, Chief Lanser provided an excuse and failed to post another IT position.

56. One of Chief Lanser's excuses he told Plaintiff was that he could not covert an ET or EE position to an IT position, and that the IT positions only went up to GS-13.

57. Plaintiff and Mr. Smith had provided Chief Lanser several IT positions that not only went up to GS-14 but also to GS-15.

58. Chief Lanser created a GS-14 Electronic Technician Supervisory position for a white male employee, whose position only went to GS-13 grade level.

59. Chief Lanser assigned to that same white male employee a black female employee to assist him with getting rid of his back log.

60. To this date, the same white male employee has the same performance issues with his back log. Additionally, the white male employee continues to act unprofessional and fails to follow FBI's policies.

61. Chief Lanser still failed to take any disciplinary action against that white male employee or address his performance in his PAR.

62. Chief Lanser created a GS-15 PT Supervisor position for a white male employee whose position series only went to a GS-1 PT.

63. Chief Lanser created a GS-15 Audio Examiner position for a white male Audio Examiner, whose series only went to a GS-14 position.

64. Plaintiff was forced by Chief Lanser to submit computer help surveys to co-workers and forced to explain why she was providing co-workers surveys, even though it was not required in the past, nor was it required of others similarly situated.

65. Chief Lanser required Plaintiff to submit computer held surveys as part of her PIP.

66. Plaintiff was constantly questioned by others about why she had to provide surveys, resulting in her being humiliated and embarrassed by Chief Lanser's actions.

67. Plaintiff was required to submit to all the program managers, a leave schedule for the year and point of contact numbers, despite the fact this was not required of others.

68. Program Managers joked about Plaintiff being special because Plaintiff had to submit a leave schedule when others did not have to.

69. To this date, Plaintiff has not observed any other non-minority employee put through the same actions as directed by Chief Lanser to the Plaintiff.

COUNT ONE
DISPARATE TREATMENT BASED ON RACE
AND SEX IN VIOLATION OF TITLE VII

70. Plaintiff realleges and reaffirms the allegations of Paragraphs 1 through 69, and incorporates them by reference herein.

71. Plaintiff is a member of two protected classes, Race (African-American or Black) and Sex (Female).

72. Plaintiff is qualified for the position she holds with the Defendants.

73. Plaintiff suffered adverse employment impact, despite the Plaintiff's qualifications.

74. Plaintiff was treated differently from other similarly-situated not in her protected classes.

75. As a direct result of Defendants' discriminatory practices, Plaintiff has sustained economic and non-economic damages.

COUNT TWO
HOSTILE WORK ENVIRONMENT BASED
ON RACE AND SEX IN VIOLATION OF TITLE VII

76. Plaintiff realleges, reaffirms, and incorporates by reference all previous paragraphs.

77. The harassment Plaintiff experienced was unwelcome.

78. Plaintiff was harassed based on her race (African-American or Black) and sex (Female).

79. The harassment that the Plaintiff suffered was so severe and/or pervasive that it altered the conditions of employment and created an abusive atmosphere for the Plaintiff.

80. There is some basis for imposing liability on the Defendants.

81. As a direct result of Defendants' discriminatory practices, Plaintiff has sustained economic and non-economic damages.

## COUNT THREE
## RETALIATION IN VIOLATION OF TITLE VII

82. Plaintiff realleges, reaffirms, and incorporates by reference all previous paragraphs.

83. Plaintiff was engaged in protected activity.

84. Defendants took adverse employment action against Plaintiff.

85. There was a causal connection between the protected activity and the adverse action.

86. As a direct result of Defendants' discriminatory practices, Plaintiff has sustained economic and non-economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against the Defendants, and to provide the following relief:

(a) That a declaratory judgment be entered finding Defendants' acts and employment practices unlawful, and that Defendants be enjoined from engaging in such unlawful acts and practices;

(b) Defendants pay Plaintiff a sum in excess of $300,000.00 for compensatory damages, backpay, interests, emotional distress;

(c) That punitive damages be awarded to Plaintiff, plus all available interest under District of Columbia law;

(d) Defendants pay Plaintiff's costs and expenses and reasonable attorney's fees as provided in Title VII in connection with this action;

(e) That this Court grant such other legal and equitable relief as may be just and proper under the circumstances.

JURY DEMAND

Plaintiffs demand a trial by jury on all the issues in this action that are triable by law.

CATHERINE SEABROOKS

By Counsel

Brown, Brown & Brown, P.C.

By:__________________________

Christopher E. Brown VSB#398852
6269 Franconia Road
Alexandria, VA 22310
(703) 924-0223
FAX (703) 924-1586
brownfirm@lawyer.com